UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. TANNER,

                      Plaintiff,                            Case No. 14-cv-13478

v                                            Honorable Thomas L. Ludington

GRAND RIVER NAVIGATION COMPANY, Inc.

                      Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO STRIKE, GRANTING
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DENYING
DEFENDANT'S MOTION IN LIMINE AS MOOT**

Plaintiff initiated this admiralty law case by filing his complaint on September 8, 2014. ECF No. 1. In his complaint, Plaintiff alleges that Defendant Grand River is liable for an injury he sustained while serving as a first mate on the Olive L. Moore tug barge.[1] Tanner brings three claims against Grand River: (1) breach of its duty to provide a seaworthy vessel under in violation of the Jones Act, 46 U.S.C. § 688 *et seq*.; (2) breach of an express or implied warranty to provide a seaworthy vessel reasonably fit for the purpose in which it was intended; and (3) failure to pay past and future maintenance and cure benefits in a timely manner. *Id*.

On September 4, 2015, Defendant Grand River filed two motions. First, Grand River moves to strike the supplemental report of Plaintiff's expert, Robert Ancell. ECF No. 12. Second, Grand River moves for partial summary judgment on four of Tanner's damage theories, only two of which are disputed by Tanner. ECF No. 11. Both motions will now be granted.

**I.**

_____

[1] The Olive L. Moore is alternatively called the Lewis J. Kuber.

The incident giving rise to the present action occurred on November 14, 2011.  Tanner Dep. At 19.  At that time Plaintiff Michael Tanner was employed by Defendant Grand River as a first mate assigned to the Olive L. Moore. *Id*. at 11-12.  Tanner alleges that, while taking on a load at the Lafarge stone quarry and loading facility of Stoneport, Michigan, a mooring line he was holding abruptly and violently jerked and his glove was caught by a "fishhook" of wire protruding from the negligently maintained line. As a result, he alleges, his left shoulder was violently jerked and he was thrown to the ground.  Tanner alleges that because of the incident he suffers from traumatic injuries to his left arm, shoulder, and neck. *Id.* at 21, 46-47

Tanner continued to work through his pain, both that day and beyond.  In fact, one month later on December 17, 2011, Tanner certified that he had not been injured or suffered any injury while employed on the Olive L. Moore. *See* Def.'s Mot. for Summ. *J*. Ex. 1.   However, over time Tanner realized that the injury was more serious than he had originally thought. Tanner Dep. at 20.  When he was able to get off the boat, he sought medical attention, obtaining an x-ray in January, 2012, and an MRI in March, 2012.  The MRI showed injuries to Tanner's left shoulder, which he disclosed to Grand River in an injury report on April 27, 2012. *See* Def.'s Mot. for Summ. *J*. Ex. 2.

Plaintiff Tanner saw a number of physicians throughout 2012, including Dr. Harandi. Tanner Dep. at 46.  Dr. Harandi eventually performed surgery on Tanner's shoulder in early 2013.  *Id*.  Tanner alleges that the surgery provided minimal relief, and he still experiences shooting pain from his left shoulder through his left arm on a regular basis. *Id*. at 47.  Tanner further alleges that his constant pain continues to limit his work and other areas of his life. *Id*.

As a result of his continuing pain, two doctors have recommended that Tanner undergo shoulder replacement surgery.  One doctor also recommended that Tanner undergo a four level

neck fusion.  Plaintiff Tanner has chosen to defer both of the recommended surgeries in order to continue working.  Pl. Resp. to Summ. J. at 7.  The parties agree that Tanner has not taken any time off work since the November 14, 2011 incident. Tanner Dep. at 48.

## II.

Defendant Grand River first moves to strike the "supplemental" report of Plaintiff's expert, Robert Ancell.  Defendant alleges that the report is not a mere supplementation, but is instead a wholly new report, containing facts and conclusions wholly missing from the original report. Defendant also argues that the late submission was neither harmless nor substantially justified.

## A.

Under Federal Rule of Civil Procedure 26(a)(2), the parties must disclose any witnesses retained to provide expert testimony. Fed. R. Civ. P. 26(a)(2)(A).  Such a disclosure "must be accompanied by a written report – prepared and signed by the witness" containing:

> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii)   the facts or data considered by the witness in forming them;
>
> (iii)  any exhibits that will be used to summarize or support them;
>
> (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).  In interpreting Federal Rule of Civil Procedure 26(a), the Sixth Circuit has explained that "a report must be complete such that opposing counsel is not forced to

depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *R. C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271 (6th Cir.2010) (internal quotation and citation omitted).

Expert reports must be supplemented when required under Rule 26(e). Fed. R. Civ. P. 26(a)(2)(E).  Under that rule, a report must be timely supplemented "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).  For expert witnesses in particular, "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." *Id*.  Any supplementation must be effected "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." *Id*.

If a party fails to comply with the requirements of Rule 26(a) or (e), then it is subject to the automatic and mandatory sanction of Rule 37(c)(1).  *See Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004).  Rule 37(c)(1) provides, "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*.  A harmless violation is one that involves an honest mistake, combined with sufficient knowledge by the adversary. *Roberts ex rel. Johnson v. Galen of Va., Inc*., 325 F.3d 776, 783 (6th Cir.2003). "District courts have broad discretion to exclude untimely disclosed expert-witness testimony." *Pride v. Bic Corp*., 218 F.3d 566, 578 (6th Cir.2000).

**B.**

- 4 -

In the present case, Plaintiff Tanner has not complied with Rule 26(a) or (e). The Scheduling Order in this case provided that Plaintiff's expert disclosures were due May 22, 2015. ECF No. 9. On February 25, 2015, Plaintiff provided Defendant with a letter from Mr. Ancell to Plaintiff's council as an initial expert disclosure. That initial disclosure explained only Mr. Ancell's computation of the estimated cost and time for Plaintiff to recover from shoulder surgery, and the typical physical activity a person can reasonably expect to perform following a shoulder surgery. The report contained no discussion of lost future earning capacity as a result of the injury itself.

The August 28, 2015 "supplementation" to Mr. Ancell's report was submitted after the deadline to submit expert disclosures, three weeks after discovery had closed, and a week before dispositive motions were due. It contained information and opinions not included in the original report, including a full review of Plaintiff's allegations and entirely new opinions regarding Plaintiff's loss of earning capacity from the initial injury.

**i.**

Despite Plaintiff's contentions, the August 28, 2015 report is not a "supplementation" of Mr. Ancell's original report, but instead an entirely new expert report. "It is not mere 'supplementation' when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the summary judgment deadline to pass, and then submits a fuller report that contains actual reasoning." *Eiben v. Gorilla Ladder Co.,* 2013 WL 1721677 (S.D. Mich. 2013) (quoting *Ullman v. Auto–Owners Mut. Ins. Co.,* 2007 WL 1057397 at *3 (S.D.Ohio 2007)). Neither is it mere supplementation when a party submits a manifestly incomplete report lacking analysis or a supporting rationale, waits for the discovery deadline to pass and a week

before the dispositive motion deadline, and then submits a fuller report that contains actual reasoning.

**ii.**

Plaintiff attempts to avoid the Rule 37(b)(1) sanction by arguing that the late-filed report is harmless. First, Plaintiff argues that it reserved the right to supplement Mr. Ancell's report in its initial disclosure. However, Rule 26(e) "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the supplement label." *Allgood v. General Motors Corp.,* 2007 WL 647496 (S.D. Ind. 2007). It is the province of the Court to set deadlines in this case, and, in its scheduling order, the Court set a deadline of May 22, 2015 for Plaintiff to file expert disclosures.

Second, Plaintiff argues that the "supplementation" was harmless because it was timely. Specifically, Plaintiff argues that Defendant still had access to the information before trial, and that Defendant was in fact able to depose Mr. Ancell after filing its motion for summary judgment. However, a main purpose of Rule 26(a) is to ensure that parties can properly prepare for cross-examination and that "deposition testimony can proceed with parties already armed with the expert's report, so as to be able to evaluate the opinions to be offered." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 700 (D.N.M. 2003).

The fact that Defendant was ultimately able to depose Mr. Ancell is immaterial. The Sixth Circuit has explained that "[u]nder Rule 26(a), a report must be complete such that opposing counsel is not forced to depose an expert in order to avoid an ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources." *R C. Olmstead, Inc. v. C.U. Interface, LLC*, 606 F.3d 262, 271 (6th Cir.2010) (internal quotation and citation omitted). Here, Defendant was

required to expend costs and resources to depose Mr. Ancell after discovery had closed. Defendant was not able to question any other witnesses or conduct any other discovery related to Mr. Ancell's conclusions.  Allowing Plaintiff to use its late disclosure would undermine the discovery process in this matter, because Defendant was not able to compile any testimony or exhibits regarding Plaintiff's undisclosed expert opinions.

Plaintiff also cannot show that his late disclosure was substantially justified under Fed. R. Civ. P. 37(c)(1). All of the information upon which Mr. Ancell based his supplementation was available at the time initial disclosures were due on May 22, 2015, since Plaintiff Tanner's deposition in this matter was taken on February 9, 2015. Plaintiff's supplementation therefore cannot be said to "include information thereafter acquired" or to be a genuine attempt to remedy previously "incomplete or incorrect information" under Rule 26(e)(1).

Because Plaintiff has not complied with Rule 26(a) or (e), and because the late disclosure was not harmless or substantially justified, the automatic and mandatory sanction of Rule 37(c)(1) applies.  Defendant's motion to strike will be granted, and the supplemental expert report of Robert Ancell will be stricken.

### III.

Defendant Grand River also moves for partial summary judgment.   A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)  The burden then shifts to the opposing party

who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).

The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Defendant now moves for summary judgment on four of Plaintiff's damages claims: (1) past lost wages; (2) future lost earning capacity; (3) past maintenance and cure; and (4) possible future maintenance and cure. Plaintiff states that he will stipulate that there is no evidence of past lost wage.  Plaintiff also agrees that there is no issue regarding past maintenance and cure because his past medical expenses were covered by insurance. Plaintiff agrees that dismissal of that claim is appropriate as long as it is conditioned on Defendant's responsibility for any subrogation claims from health insurance carriers. Summary judgment will therefore be granted as to those two claims.  Plaintiff's disputed claims of future lost earning capacity and possible future maintenance and cure will now be addressed.

## A.

Defendant first disputes Plaintiff's claim for future lost earning capacity.  Under the Jones Act, a Plaintiff may recover compensatory damages for lost income.  *See Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 592 (2d. Cir. 1998).  To recover, the plaintiff must prove that his lost income "occurred by reason of the injury sustained from the accident." *Id*. The

alleged lost income may take the form of past lost earnings and/or damages for the loss of prospective earnings. *See Earl v. Bouchard Tranp. Co.*, 735 F. Supp. 1167, 1172 (E.D.N.Y. 1990).

**i.**

To establish a claim of loss of future earning capacity under the Jones Act, a Plaintiff must establish that "the reduction, if any, in his earning capacity proximately resulted from the injury by showing the existence of some condition which demonstrably limits his opportunities for gainful activity." *United States Steel Corp. v. Lamp*, 436 F.2d 1256, 1270 (6th Cir.1970) (citing *Wiles v. New York, Chicago, and St. Louis R.R. Co*., 283 F.2d 328, 332 (3d Cir.1960)). The plaintiff has the burden of showing that the impairment of his future earning capacity is "probable." *Taylor v. Consol. Rail Corp*., 1997 WL 321142, *3 (6th Cir. July 11, 1997). Furthermore, the loss of future earning capacity must be "shown with reasonable certainty and not merely speculative in nature." *Lamp*, 436 F.2d 1256.

In this inquiry, "[t]he critical question is whether plaintiff has produced competent evidence suggesting that his injuries have narrowed the range of economic opportunities available to him." *Gleason v. Am. S.S. Co.*, 1996 WL 764109 (E.D.Mich. May 3, 1996) (internal quotations and citation omitted).

> This means that a plaintiff need not, as a prerequisite to recovery, prove that in the near future he will earn less money than he would have but for his injury. Rather, a plaintiff must show that his injury has caused a diminution in his ability to earn a living. Such a diminution includes a decreased ability to weather adverse economic circumstances, such as discharge, or lay-off, or to voluntarily leave the defendant employer for other employment.

*Id*. In order to prove such a loss of future earning capacity, a plaintiff should present "competent and reliable medical testimony that he suffered a current, diagnosable injury that left him

impaired with respect to future earning capacity." *Hayes v. Inland Lakes Management, Inc.*, 450 F.Supp.2d 741, 745 (S.D. Mich. 2006).

**ii.**

Plaintiff argues that he may properly proceed on his claim for loss of future earning capacity for two main reasons. First, he argues that the serious and debilitating nature of his injuries is evident from the recommendations of his treating physicians and his expert, Dr. Cullis, who have opined that he should eventually undergo a total shoulder replacement surgery, and may need to undergo a neck fusion. Plaintiff also argues that he is vulnerable to the cyclical nature of his industry and the unpredictable schedule of his relief master position. Finally, Plaintiff argues that he is presently receiving accommodations from his crew that he cannot expect to receive from any future employer.

Plaintiff cites a number of cases to support his position. First he cites *Wiles v. New York, Chicago, and St. Louis R.R. Co.*, 283 F.2d 328 (3d Cir.1960) for the proposition that a plaintiff may obtain damages for loss of future earning capacity if he shows that his injury will hinder him in finding future employment, even where he has not yet suffered economic loss due to his present employment. *Id*. at 332. Second, Plaintiff cites *Gorniak v. Nat'l R.R. Passenger Corp.*, 889 F.2d 481 (3d Cir.1989) to hold that the possibility that a Plaintiff may be displaced from his job is sufficient to allow him to pursue a claim for loss of future earning capacity. *Id*. at 484. Tanner argues that he is in a similar position to the plaintiff in *Gorniak* because, although he may be able to continue earning at his current rate, the foreseeable ups and downs of his industry could threaten his current position.

In each of the cases Plaintiff Tanner relies on, "the party seeking relief presented competent and reliable medical testimony that he suffered a current, diagnosable injury that left

him impaired with respect to future earning capacity." *Hayes* 450 F. Supp. at 745.  Plaintiff, on the other hand, has not provided medical testimony that he suffered from a current, diagnosable injury that left him impaired with respect to future earning capacity.  Plaintiff concedes that all of his doctors have released him to work without restrictions. *See* Pl. Resp. to Summ. J. 7-8. Plaintiff also concedes that he has kept working and has chosen to put off any additional surgery. *Id*. The fact that two doctors have suggested that Plaintiff may need to undergo additional shoulder surgery in the future is insufficient evidence on its own to create a triable issue of fact. Because Plaintiff has failed to meet his burden of showing probable impairment of his future earning capacity, Defendant's motion for summary judgment will be granted on this injury claim.

**B.**

**i.**

Defendant also moves for summary judgment on Plaintiff's injury claim of future maintenance and cure. "Maintenance" is the obligation of a ship owner to provide food and lodging to a seaman who becomes ill or injured in the service of the ship. "Cure" is the obligation of the owner to pay for medical expenses.  "Cure" in the context of maintenance and cure means "care;" it does not mean lifetime palliative care.  *See Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, (1938).   Both maintenance and cure are to be paid until the seaman reaches maximum recovery or maximum cure. *Williams v. Kingston Shipping Co., Inc*., 925 F.2d 721, 723 (4th Cir.1991).  When "it appears that the seaman's condition is incurable, or that future treatment will merely relieve pain and suffering, but not otherwise improve the seaman's physical condition, it is proper to declare that the point of maximum cure has been achieved." *Pelotto v. L & N Towing*, 604 F.2d 396, 400 (5th Cir.1979).

The recovery of maintenance and cure is confined to immediate and definitely ascertainable needs. *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 533 (9th Cir. 1962), *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 531–532, (1938). In addition to proving that he has suffered an injury from the boating mishap in question, a plaintiff seeking maintenance and cure bears the burden of proof that he has suffered an injury from a defendant's failure to pay maintenance and cure. *Smith v. Delaware Bay Launch Service, Inc.,* 842 F.Supp 770 (D.Del. 1994). In other words, a plaintiff must prove that the failure to pay maintenance and cure caused his additional injury or prolonged or aggravated the initial injury. *Id*.

In *Smith*, the court held that a plaintiff could not recover maintenance and cure for an operation that he could have had, but voluntarily chose not to undergo in view of the risks of surgery. *Id*. at 775-76. Similarly, in *Bonneau v. Guidance Fishing Corp.*, a federal district court held that a plaintiff could not recover for a possible future ankle fusion, because the payments were not "definitely ascertainable." 919 F.Supp 46, 48 (D. Mass. 1996). *See also Pelotto v. L & N Towing Co.,* 604 F.2d 396, 401 (5th Cir.1979) (seamen accorded right "to bring serial suits to collect maintenance payments as they come due"); *Myers v. Isthmian Lines, Inc.,* 282 F.2d 28, 32 n. 4 (1st Cir.1960) (if greater recovery possible in future, maintenance expenses necessary to utilize treatment could be basis for additional liability); *Springborn v. American Commercial Barge Lines, Inc.* 767 F.2d 89, 95 (5th Cir. 1985) ("Maintenance is limited to seamen who actually incur expenses for their support.").

### ii.

Plaintiff argues that two doctors have recommended a shoulder replacement surgery at some point in the future, and that he may be a candidate for a four level fusion for his neck. Plaintiff has voluntarily delayed both of these surgeries because he views the surgeries as career

ending. *See* Tanner Dep. at 46-47. This kind of speculative future operation cannot be categorized as "definitely ascertainable." *Gypsum Carrier,* 307 F.2d at 533.

Whether Plaintiff will need to undergo additional surgery in the future, and whether that operation will be found "curative" is a question for a later day. *See Bonneau*, 919 F.Supp at 48. Plaintiff's claim for future maintenance and cure will be dismissed without prejudice, and Plaintiff will be free to raise the claim in a later suit upon a proper showing.

**IV.**

Defendant has also filed a motion in limine to exclude Robert Ancell's testimony and opinions. ECF No. 19. Because that motion deals, in large part, with Mr. Ancell's stricken supplemental report regarding loss of future income, the motion will be denied as moot. The denial will be without prejudice, and Defendant is free to file a motion in limine to exclude the remaining testimony and opinions of Mr. Ancell.

**V.**

Accordingly, it is **ORDERED** that Defendant's motion to Strike the supplemental expert report of Robert Ancell, ECF No. 12, is **GRANTED**. This order has no impact on Plaintiff's ability to use the initial expert report of Robert Ancell.

It is further **ORDERED** that the supplemental expert report of Robert Ancell is **STRICKEN**.

It is further **ORDERED** that Defendant's motion for partial summary judgment, ECF No. 11, is **GRANTED**.

It is further **ORDERED** that Plaintiff's claims of damages for loss of future earning capacity and past lost wage lost wages are **DISMISSED**.

It is further **ORDERED** that Plaintiff's claim of damages for past maintenance and cure is **DISMISSED**. This order does not affect Defendant's responsibility for any potential subrogation claims from the health insurance carrier.

It is further **ORDERED** that Plaintiff's claim of damages for future maintenance and cure is **DISMISSED without prejudice** to renewal on a proper showing.

It is further **ORDERED** that Defendant's motion in limine to exclude Robert Ancell's testimony and opinions, ECF No. 19, is **DENIED as moot, without prejudice**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 9, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 9, 2015.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---

- 14 -