UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL J. TANNER,

    Plaintiff,      Case No. 14-cv-13478

v      Honorable Thomas L. Ludington

GRAND RIVER NAVIGATION COMPANY, Inc.

    Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART FIRST AND SECOND MOTIONS IN LIMINE, AND GRANTING THIRD MOTION IN LIMINE**

Plaintiff initiated this admiralty law case by filing his complaint on September 8, 2014. ECF No. 1. In his complaint, Plaintiff alleges that Defendant Grand River is liable for an injury he sustained while serving as a first mate on the Olive L. Moore tug barge.[1] Tanner brings three claims against Grand River: (1) breach of its duty to provide a seaworthy vessel in violation of the Jones Act, 46 U.S.C. § 688 *et seq*.; (2) breach of an express or implied warranty to provide a seaworthy vessel reasonably fit for the purpose in which it was intended; and (3) failure to pay past and future maintenance and cure benefits in a timely manner. *Id*.

On September 4, 2015, Defendant Grand River moved to strike the supplemental report of Plaintiff's expert, Robert Ancell, and for partial summary judgment on four of Tanner's damage theories. ECF Nos. 11, 12. Both motions were granted on December 9, 2015.

The jury trial is set to take place on October 18, 2016. On July 28, 2016 Defendant Grand River filed three motions in limine. *See* ECF Nos. 30-32.

**I.**

**A.**

---

[1] The Olive L. Moore is alternatively called the Lewis J. Kuber.

The incident giving rise to the present action occurred on November 14, 2011. Tanner Dep. at 19. At that time Plaintiff Michael Tanner was employed by Defendant Grand River as a first mate assigned to the Olive L. Moore. *Id*. at 11-12. Tanner alleges that, while taking on a load at the Lafarge stone quarry and loading facility of Stoneport, Michigan, a mooring line he was holding abruptly and violently jerked and his glove was caught by a "fishhook" of wire protruding from the negligently maintained line. As a result, he alleges, his left shoulder was violently jerked and he was thrown to the ground. Tanner alleges that because of the incident he suffers from traumatic injuries to his left arm, shoulder, and neck. *Id.* at 21, 46-47

Tanner continued to work through his pain, both that day and beyond. In fact, a month later on December 17, 2011, Tanner certified that he had not been injured or suffered any injury while employed on the Olive L. Moore. *See* Def.'s Mot. for Summ. *J.* Ex. 1. However, over time Tanner realized that the injury was more serious than he had originally thought. Tanner Dep. at 20. When he was able to get off the boat, he sought medical attention, obtaining an x-ray in January, 2012, and an MRI in March, 2012. The MRI showed injuries to Tanner's left shoulder, which he disclosed to Grand River in an injury report on April 27, 2012. *See* Def.'s Mot. for Summ. *J.* Ex. 2.

Plaintiff Tanner saw a number of physicians throughout 2012, including Dr. Harandi. Tanner Dep. at 46. Dr. Harandi eventually performed surgery on Tanner's shoulder in early 2013. *Id*. Tanner alleges that the surgery provided minimal relief, and he still experiences shooting pain from his left shoulder through his left arm on a regular basis. *Id*. at 47. Tanner further alleges that his constant pain continues to limit his work and other areas of his life. *Id*.

As a result of his continuing pain, two Doctors have recommended that Tanner undergo shoulder replacement surgery. One Doctor also recommended that Tanner undergo a four level

- 2 -

neck fusion. Plaintiff Tanner chose to put off both of the recommended surgeries in order to continue working. Pl. Resp. to Summ. J. at 7.

**B.**

On September 4, 2015 Defendant filed two motions. First, Defendant moved to strike the "supplemental" report of Plaintiff's expert, Robert Ancell. Plaintiff had not complied with Rule 26(a) or (e) in furnishing the report and because the non-compliance was not harmless, Defendant's motion was granted and Ancell's "supplemental" report was stricken pursuant to Rule 37(c)(1). *See Dickenson v. Cardiax and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004

Second, on September 4, 2015 Defendant Grand River moved for partial summary judgment on four of Plaintiff's damages claims: (1) past lost wages; (2) future lost earning capacity; (3) past maintenance and cure; and (4) possible future maintenance and cure. Plaintiff stipulated that there was no evidence of past loss wages. Plaintiff also agreed that there was no issue regarding past maintenance and cure because his past medical expenses were covered by insurance, and agreed dismissal of that claim was appropriate as long as the dismissal was conditioned on Defendant's responsibility for any subrogation claims from health insurance carriers. Summary judgment was also granted as to Plaintiff's future lost earning capacity claim because Plaintiff failed to meet his burden of showing probable impairment of his future earning capacity. Finally, summary judgment was granted as to Plaintiff's claim for possible future maintenance and cure because he had not yet undergone the recommended shoulder surgeries and thus his speculative damages were not sufficiently ascertainable.

**C.**

Following issuance of the Court order on December 9, 2016 Plaintiff Tanner decided to undergo a second arthroscopic procedure on his shoulder when his vessel was "laid up" in late January. *See* ECF No. 26. The parties therefore requested an adjournment of the trial in order to review and evaluate Tanner's post-surgical and recovery conditions, which was granted on January 19, 2016. *Id*. After the surgery was delayed, the parties requested a second adjournment, which was granted on April 12, 2016.

## II.

Under the current scheduling order, the trial is scheduled for October 18, 2016. On July 28, 2016 Defendant Grand River filed three motions in limine. Each motion will be addressed in turn.

### A.

In its first motion in limine, Defendant seeks to preclude Plaintiff Tanner from offering medical testimony regarding his shoulder injury. *See* Mot. Limine I, ECF No. 30. Specifically, Defendant seeks to preclude Plaintiff from testifying that his shoulder and neck pain is not the result of arthritis. Defendant argues that Plaintiff is not a qualified medical expert, and thus his non-expert opinion is prohibited under Federal Rules of Evidence 701 and 702. *Id*.

In response Plaintiff Tanner agrees that he cannot offer medical testimony, but argues that his testimony is not meant as a diagnosis, but is instead offered in the context of explaining why he did not immediately make an incident report about his work injury. *See* Response I, ECF No. 36. He also argues his testimony is offered for the purpose of highlighting that his arm went suddenly numb and immobile, suggesting that arthritis was not the sole cause of his pain. *Id.* Plaintiff therefore argues that his testimony should not be excluded, and that any confusion regarding the testimony could be resolved by a limiting instruction under Rule 105. *Id*. ("If the

court admits evidence that is admissible against a party or for a purpose–but not against another party or for another purpose–the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly."). Plaintiff Tanner further argues that the Court could also instruct the jury that Mr. Tanner is not qualified to offer medical expertise, and that it should only consider his testimony for limited purposes.

At the final pretrial conference held on August 25, 2016, the parties agreed that, while Tanner should be precluded from giving a medical diagnosis, he should be permitted to discuss the symptoms of his injury subject to a limiting instruction. Defendant's first motion in limine will therefore be granted in part and denied in part.

**B.**

In its second motion in limine, Defendant moves to preclude Plaintiff from introducing evidence concerning a "slidebar", or railing system, that was on the Stoneport dock alongside the Olive L. Moore Tug on the day of the alleged accident. *See* Mot. Limine II, ECF No. 31. Defendant alleges that docks are extensions of land, not appurtenances of vessels, and therefore dock conditions are neither relevant nor probative of Plaintiff's unseaworthiness claim under Rules 401, and 402. Grand River also argues such evidence is unfairly prejudicial under Rule 403.

Plaintiff Tanner's response (wrongfully labeled on the docket) argues that Defendant's motion should be denied. *See* Response II, ECF No. 35. Plaintiff concedes that the condition of the dock is irrelevant to his unseaworthiness claim, but argues that it is relevant to his negligence claim under the Jones Act. *Id*. Specifically, Plaintiff argues that the dock conditions are relevant to the question of whether the ship owner provided him with a reasonably safe vessel "on or off the ship" under *Rannals v Diamond Jo Casino*, 265 F.3d 442 (6th Cir. 2001) (holding that

"[w]orkers who satisfy the definition of seaman under the Jones Act may recover under the Jones Act whenever they are injured in the service of a vessel, regardless of whether the injury occurs on or off the ship."). Plaintiff also argues that admission of the evidence will not substantially prejudice Defendant under Rule 403. Defendant has not filed a reply.

At the final pretrial conference held on August 25, 2016, the parties agreed that while the dock conditions are irrelevant to Plaintiff's unseaworthiness claim, they are relevant to his negligence claim under the Jones Act. The dock conditions will therefore be admissible for that limited purpose. Defendant's second motion in limine will therefore be granted in part and denied in part.

### C.

In its third and final motion in limine, Defendant moves to exclude testimony regarding the Number One Winch that was aboard the Olive L. Moore, but was inoperable on the day of the alleged accident. The inoperability of the Number One Winch allegedly forced Plaintiff to manually assist in moving the barge along the dock using a Bow Winch, which allegedly resulted in the injury to his shoulder and neck. *See* Mot. Limine III, ECF No. 32. Defendant alleges that the inoperability of the Number One Winch is irrelevant to the question of whether the *Bow Winch* was unseaworthy or created an unreasonably unsafe to work claim under Rules 401, and 402. Grand River also argues such evidence is unfairly prejudicial under Rule 403.

In his response (again wrongfully labeled on the docket) Plaintiff Tanner that Defendant's motion should be denied because the inoperability of the Number One Winch was part of the causal chain ultimately leading to Plaintiff's injury. *See* Response III, ECF No. 37. Plaintiff argues that the Bow Winch was inferior to the Number One Winch in two ways. First, Plaintiff argues that the location of the Bow Winch in the windlass room limits visibility of the

mooring operations, as compared to the Number One Winch that is located on the main deck. *Id.* Second, Plaintiff argues that the Bow Winch requires the use of more cable than the Number One Winch, making injuries of the kind allegedly experienced by Tanner more likely. *Id.*

In its reply, Defendant argues that Plaintiff's opinion that the Bow Winch was inferior to the Number One Winch is not admissible under Rules 701 and 702. Defendant argues that Plaintiff has not been qualified as an expert in any technical field that would be called on to reach such an opinion under Rule 702, and that Tanner should be precluded from offering lay opinion testimony because the operability of the winches requires scientific, technical, or specialized knowledge under Rules 701(c) and 702.

Defendant is correct. Because the question of whether the bow winch is unreasonably unsafe or rendered the ship unseaworthy is not proper lay opinion testimony under Rule 701(c), Plaintiff Tanner's testimony on that point is inadmissible. Plaintiff has not been qualified as an expert on that point. Nor has he provided any expert testimony regarding the inferiority of the Bow Winch or any expert testimony regarding industry winch standards. Defendant's third motion in limine will be granted, and Plaintiff Tanner will be precluded from offering testimony regarding the inoperable Number One Winch.

### III.

Accordingly, it is **ORDERED** that Defendant Grand River's motion in limine to exclude Plaintiff's testimony diagnosing his own medical condition, ECF No. 30, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant Grand River's motion in limine to exclude evidence of the condition of the dock as a basis for unseaworthiness, ECF No. 31, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant Grand River's motion in limine to exclude statements regarding the use of irrelevant equipment, ECF No. 32, is **GRANTED.** Plaintiff Tanner is **PRECLUDED** from offering testimony regarding the inoperable Number One Winch.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: August 26, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 26, 2016.

s/Michael A. Sian<br>
MICHAEL A. SIAN, Case Manager